ANNA B. GAGE, Appellee, v. LEATHA MORRIS, otherwise known as LETHA MORRIS, Appellant.

No. 45571.

FEBRUARY 10, 1942.

Kimball, Peterson, Smith & Peterson, for appellee.

John J. Hess and Liston M. Hall, for appellant.

BLISS, C. J.—Plaintiff was a widow, about 76 years of age, afflicted with palsy and other ailments quite often incident to such age. There were three living children, Stella, Florence and Leatha. The relations between the two first named and the defendant were not entirely harmonious. Plaintiff owned what is designated in the record as her "home place." It was a small residence property. Adjoining this one or close by, was a 16-acre tract. She also owned a 10-acre tract. Apparently each of the latter had buildings. At or about the time when the matter in controversy arose, she also had about $900 on a certificate of deposit, and stock to the amount of $500 in a public utility company, paying her 6 per cent. She had previously sold the ten acres on contract to her daughter, Stella, and husband. They were unable to pay for the land and conveyed it back to her, but during the time they had it they paid interest to plaintiff and also the taxes on the property. The plaintiff had also loaned $1,700 to the daughter, Florence, and her husband, and held their note for that amount. In the autumn of 1937, the defendant, a divorced woman, with a daughter of about 12 years and a son about 8 years, came from Council Bluffs to live with the plaintiff. Shortly after, on October 25, 1937, the plaintiff and defendant went to the mother's banker, and, at her request, a deed conveying the 16 acres to the defendant was prepared, executed and left with the banker for recording. The recited consideration was "One Dollar, Love and Affection." There was no conversation at the bank respecting the reason for the conveyance or any other consideration. The deed recited the reservation of a life estate in the grantor. On November 16, 1937, the plaintiff and the defendant went to the office of a lawyer, and plaintiff asked him to prepare a deed conveying the "home place" to the defendant, which he did. The recited consideration was "One Dollar and other valuable con-

sideration.'' The plaintiff and the lawyer testified that at this time the plaintiff said that the consideration was that the defendant was to stay with her and care for her the rest of her life. The defendant denied that there was such talk. This deed also reserved a life interest in the mother. The defendant remained with plaintiff until in January, 1938, when she went back to Council Bluffs, and did not return to plaintiff's home until in the late summer of 1939. There was testimony that she had stayed with her mother at times during the period mentioned. Their home life was far from pleasant from then on. The mother complained of gross verbal abuse from the daughter, and of mistreatment by the 10-year-old grandson. The daughter and the granddaughter testified to seeing the plaintiff hovering over the sleeping boy with a butcher knife in her hand. The plaintiff denied any such conduct. On January 4, 1940, the defendant executed under oath an information charging the plaintiff to be insane. She refused to prosecute this charge, but on January 12, 1940, she filed another such information, causing her mother to be arrested and taken before the commissioners. Defendant testified against her mother at the hearing, and accused her of liking and drinking intoxicants to excess. There was no basis for such a charge. She never mentioned, so far as disclosed by the record of the commissioners, anything about the butcher-knife incident. The commissioners committed the plaintiff to St. Bernard's Hospital as a fit subject for treatment, but she was pronounced sane and released after four days confinement. Shortly thereafter plaintiff brought an action of forcible entry and detainer and ejected the defendant from the plaintiff's home.

In her petition filed January 19, 1940, plaintiff alleged the execution of the deeds, as stated herein, and averred that the consideration therefor was that the defendant should properly care for plaintiff during her lifetime, and that defendant had breached the agreement and had attempted to have her care committed to others, and that because of total failure of consideration the deeds should be set aside. The evidence discloses, as we have stated, that there was nothing said about future care and support being a consideration for the deed of October 25,

1937. There is testimony by the plaintiff that the inducing cause of the execution of this deed was the continuous threatening demand of defendant that it be done, reinforced by the representation that papers, for placing her in an insane hospital, executed by plaintiff's other daughters were then in a bank awaiting only the defendant's signature. The record satisfies us that the representation was false. At the close of plaintiff's case, she filed an amendment to her petition to conform to the proof, wherein she alleged that the first deed was executed because of the fraud, intimidation, duress, and false representations exercised upon her in her aged, sick and infirm condition. Defendant's answer admitted the execution of the deeds, but denied all other allegations. Defendant moved to strike the amendment to the petition as immaterial, irrelevant and incompetent, filed too late, and contrary to the evidence. There is no express ruling on the motion, but the court's decree clearly shows that it gave the amendment consideration. The court found that the plaintiff was entitled to the relief prayed for, and that there had been a total failure of consideration for the deeds and that they had been obtained by false and fraudulent representations and were executed under such circumstances as not to be the free and voluntary acts of the plaintiff. The decree set aside the deeds and established absolute ownership of the said property in the plaintiff, free from any claims of defendant. Since the entry of the decree, the plaintiff has died.

There was other evidence tending to support the contentions of each party which needs no special reference. There was testimony by the defendant and by other witnesses that the deeds were executed by the mother to balance the property favors which she had granted to the other daughters. The mother denied this. We have noted what the record shows she had done for the other girls.

It is our judgment that the record fully supports the decree of the able and experienced trial court that the execution of the first deed was not the grantor's free and voluntary act; that there was failure of consideration for the second deed; and that both of them were rightfully set aside. Under the record, we find nothing to warrant any further compensation to appel-

lant for such services as she may have performed in the care of appellee. The decision of this court in Timberman v. Timberman, 229 Iowa 835, 295 N. W. 158, wherein the facts were somewhat similar, fully supports the decree of the trial court with respect to the second deed. The decree is, therefore, affirmed.—Affirmed.

MITCHELL, SAGER, MILLER, OLIVER, HALE, WENNERSTRUM, GARFIELD, and STIGER, JJ., concur.